UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Donna Culleton,                     )
                                    )        Docket No. 2:15-cv-03739-DRH-ARL
                    Plaintiff,      )
                                    )
        vs.                         )
                                    )
Honeywell International Inc.,       )
                                    )
                    Defendant.      )

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Allison E. Ianni
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
1745 Broadway, 22nd Floor
New York, New York 10019
(212) 492-2500

Leah S. Freed (admitted *pro hac vice*)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
(602) 778-3700

*Attorneys for Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

I.      PRELIMINARY STATEMENT .................................................................... 1

II.     STATEMENT OF UNDISPUTED FACTS ................................................... 2

      A.      Honeywell Implements Several Organizational Changes
             In Culleton's Department .......................................................................... 3

      B.      Culleton Experiences Immediate Conflict With Jones .......................... 3

      C.      Culleton Reports That Jones Treats Women Differently ....................... 4

      D.      Jones Repeatedly Counsels Culleton Regarding Her Performance And The
             Need For Her To Embrace Her Department's Organizational Changes ............... 5

      E.      Culleton Complains Her Performance Review Contains Misrepresentations ...... 6

      F.      While On A Medical Leave of Absence, Culleton Resigns Her Employment ..... 7

III.    ARGUMENT ................................................................................................ 8

      A.      The Applicable Summary Judgment Standard ...................................... 8

      B.      Summary Judgment Is Proper On Culleton's Sex Discrimination Claim ............. 9

            1.   Culleton Cannot Establish A Prima Facie Case of Sex Discrimination ......... 9

                 a.    Culleton Did Not Suffer An Adverse Employment Action .................... 9

                     i.    Critical Feedback Is Not An Adverse Employment Action ............. 10

                     ii.   Honeywell's Failure To Select Culleton For A Position That
                         Was Cancelled Due To Budgetary Constraints Is Not An
                         Adverse Action ........................................................................ 12

                     iii.  Culleton Was Not Constructively Discharged ............................... 13

                 b.    Culleton Cannot Demonstrate That She Was Treated Less
                    Favorably Than Similarly-Situated Men ....................................... 15

i

2.   Culleton Cannot Demonstrate That Honeywell's Legitimate Non-Discriminatory Reasons For Its Actions Are Pretext For Sex Discrimination.........................................................................16

C.   Honeywell Is Entitled To Summary Judgment On Culleton's Age Discrimination Claim.....................................................................18

    1.   Culleton Cannot Establish A Prima Facie Case Of Age Discrimination.....................................................................19

    2.   Culleton Cannot Establish Her Age Was The "But For" Cause Of Any Adverse Employment Action..........................................20

D.   Culleton's Retaliation Claim Fails As A Matter of Law ....................................21

    1.   Culleton Cannot Establish A Prima Facie Case Of Retaliation...................21

    2.   Culleton Cannot Establish That "But For" Her Complaint(s), Jones Would Have Treated Her Differently .................................23

IV.   CONCLUSION.................................................................................25

CERTIFICATE OF SERVICE .................................................................26

## TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Alfano v. Costello,*
   294 F.3d 365 (2d Cir. 2002).................................................................................. 11

*Aiossa v. Bank of Am., N.A.,*
   No. 10-CV-1275 (JS) (ETB), 2012 WL 4344183 (E.D.N.Y. Sept. 21, 2012)......................... 21

*Aspilaire v. Wyeth Pharm. Inc.,*
   612 F. Supp. 2d 289 (S.D.N.Y. 2009)..................................................................... 14

*Aulicino v. N.Y. City Dep't of Homeless Servs.,*
   580 F.3d 73 (2d Cir. 2009)..................................................................................... 12

*Baguer v. Spanish Broad. Sys., Inc.,*
   2010 WL 2813632 (S.D.N.Y. July 12, 2010) ........................................................... 20

*Beachum v. AWISCO N.Y.,*
   785 F. Supp. 2d 84 (S.D.N.Y. 2011)......................................................................... 15

*Bowen v. City of N.Y.,*
   13 F. Supp. 3d 179 (E.D.N.Y. 2014) ............................................................... 10, 19

*Boyd v. Presbyterian Hosp. in City of N.Y.,*
   160 F. Supp. 2d 522 (S.D.N.Y. 2001)....................................................................... 10

*Brennan v. Met. Opera Ass'n,*
   192 F.3d 310 (2d Cir. 1999)..................................................................................... 9

*Brown v. Am. Golf Corp.,*
   99 Fed. Appx. 341 (2d Cir. 2004) ........................................................................... 11

*Brown v. Time, Inc.,*
   1997 WL 231143 (S.D.N.Y. May 7, 1997) ............................................................... 24

*Bruder v. Jewish Bd. of Family & Children Servs.,*
   No. 10-CV-5951(MKB), 2013 WL 789231 (E.D.N.Y. Mar. 4, 2013) .................................... 20

*Campbell v. N.Y. City Transit Auth.,*
   93 F. Supp. 3d 148 (E.D.N.Y. 2015) ....................................................................... 14

*Cecil v. U.S. Postal Serv.,*
   2004 WL 1886202 (S.D.N.Y. Aug. 24, 2004) ........................................................... 14

*Chacko v. DynAir Servs., Inc.*,
   No. 96-CV-2220(SJ), 2001 WL 930774 (E.D.N.Y. June 14, 2001)........................................ 15

*Chan v. NYU Downtown Hosp.*,
   2006 WL 345853 (S.D.N.Y. Feb. 14, 2006)............................................................................ 16

*Chin-McKenzie v. Continuum Health Partners*,
   876 F. Supp. 2d 270 (S.D.N.Y. 2012).................................................................................... 11

*Costello v. N.Y. State Nurses Ass'n*,
   783 F. Supp. 2d 656 (S.D.N.Y. 2011).................................................................................... 12

*Dall v. St. Catherine of Siena Med. Ctr.*,
   966 F. Supp. 2d 167 (E.D.N.Y. 2013) .............................................................................. 21, 23

*Davis v. Avaya, Inc.*,
   295 F. App'x 380 (2d Cir. 2008) ...................................................................................... 16, 17

*Dean v. Westchester Cty. Dist. Attorney's Office*,
   119 F. Supp. 2d 424 (S.D.N.Y. 2000).................................................................................... 16

*Deberry v. Brookdale Univ. Hosp. and Med. Ctr.*,
   No. 12-CV-6251(SLT)(RLM), 2016 WL 3840673 (E.D.N.Y. July 12, 2016)........................ 10

*Delaney v. Bank of Am. Corp.*,
   766 F.3d 163 (2d Cir. 2014).............................................................................................. 20, 24

*DeNigris v. N.Y. City Health and Hosps. Corp.*,
   861 F. Supp. 185 (S.D.N.Y. 2012) ........................................................................................ 12

*Dilettoso v. Potter*,
   2006 WL 197146 (D. Ariz. Jan. 25, 2006) ............................................................................ 23

*Duprey v. Prudential Ins. Co. of Am.*,
   910 F. Supp. 879 (N.D.N.Y. 1996)........................................................................................ 16

*EEOC v. Bloomberg L.P.*,
   967 F. Supp. 2d 816 (S.D.N.Y. 2013).................................................................................... 22

*Ehrbar v. Forest Hills Hosp.*,
   131 F. Supp. 3d 5 (E.D.N.Y. 2015) .................................................................................. 22, 24

*Feingold v. New York*,
   366 F.3d 138 (2d Cir. 2004)................................................................................................... 21

*Fincher v. Depository Trust and Clearing Corp.,*
   604 F.3d 712 (2d Cir. 2010) .................................................................. 21

*Forrest v. Jewish Guild for the Blind,*
   3 N.Y.3d 295 (N.Y. 2004) (2004) ........................................................ 12

*Frida v. Henderson,*
   2000 WL 1772779 (S.D.N.Y. Nov. 30, 2000) ................................ 11, 19

*Gaffney v. City of New York,*
   101 A.D.3d 410 (N.Y. App. Div. 2012) ............................................... 13

*Gavenda v. Orleans Cty.,*
   2000 WL 1375590 (W.D.N.Y. Sept. 21, 2000) ................................ 16, 17

*Gorman v. Covidien, LLC,*
   146 F. Supp. 3d 509 (S.D.N.Y. 2015) .................................................. 11

*Gross v. FBL Fin. Servs., Inc.*
   577 U.S. 167 (2009) ............................................................................ 19

*Hahn v. Bank of Am. Inc.,*
   2014 WL 1285421 (S.D.N.Y. Mar. 31, 2014) ...................................... 22

*Hicks v. Baines,*
   593 F.3d 159 (2d Cir. 2010) ................................................................. 17

*Honey v. Cty. of Rockland,*
   200 F. Supp. 2d 311 (S.D.N.Y. 2002) ................................................ 10

*Housel v. Rochester Inst. of Tech.,*
   6 F. Supp. 3d 294 (W.D.N.Y. 2014) ................................................... 24

*Hunter v. St. Francis Hosp.,*
   281 F. Supp. 2d 534 (E.D.N.Y. 2003) ................................................ 22

*In re Metlife Demutualization Litig.,*
   624 F. Supp. 2d 232 (E.D.N.Y. 2009) .................................................. 8

*ITC Ltd. v. Punchgini, Inc.,*
   482 F.3d 135 (2d Cir. 2007) .................................................................. 8

*Kalra v. HSBC Bank USA, N.A.,*
   567 F. Supp. 2d 385 (E.D.N.Y. 2008) ................................................ 20

*Kamrowski v. Morrison Mgmt. Specialist,*
2010 WL 3932354 (S.D.N.Y. Sept. 29, 2010)................................................................ 11

*Katz v. Beth Israel Med. Ctr.,*
2001 WL 11064 (S.D.N.Y. Jan. 4, 2001) ................................................... 11, 14, 19

*Kelderhouse v. St. Cabrini Home,*
259 A.D.2d 938 (N.Y. App. Div. 1999) .................................................................. 20

*Leibowitz v, Cornell Univ.,*
584 F.3d 487 (2d Cir. 2009)...................................................................................... 9

*Lioi v. N.Y. City Dep't of Health & Mental Hygiene,*
914 F. Supp. 2d 567 (S.D.N.Y. 2012).................................................................... 15

*Lomotey v. Conn. Dep't of Transp.,*
2012 WL 642763 (D. Conn. Feb. 28, 2012) ......................................................... 12

*Mark v. Brookdale Univ. Hosp.,*
2005 WL 1521185 (E.D.N.Y. June 22, 2005) ...................................................... 17

*Mathirampuzha v. Potter,*
548 F. 3d 70 (2d Cir. 2008)...................................................................................... 11

*Matye v. City of N.Y.,*
2015 WL 1476839 (E.D.N.Y. Mar. 31, 2015) ..................................................... 24

*Mazur v. N.Y. City Dep't of Educ.,*
53 F. Supp. 3d 619 (S.D.N.Y. 2014)...................................................................... 19

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973)............................................................................................ 9, 18

*McNamee v. Starbucks Coffee Co.,*
914 F. Supp. 2d 408 (W.D.N.Y. 2012) .................................................................. 18

*McWhite v. N.Y. City Housing Auth.,*
2008 WL 1699446 (E.D.N.Y. April 10, 2008) ..................................................... 11

*Meiri v. Dacon,*
759 F.2d 989 (2d Cir. 1989).................................................................................... 17

*Miller v. Praxair, Inc.,*
408 Fed. App'x 408 (2d Cir. 2010)................................................................... 13, 14

*Miller v. Nat'l Ass'n of Secs. Dealers, Inc.*,
703 F. Supp. 2d 230 (E.D.N.Y. 2010) ................................................................. 19

*Moini v. Univ. of Texas at Austin*,
832 F. Supp. 2d 710 (W.D. Tex. 2011) ................................................................. 23

*Mullins v. Consol. Edison Co. of N.Y., Inc.*,
2015 WL 4503648 (S.D.N.Y. July 22, 2015) ....................................................... 12

*Nelson v. HSBC Bank USA*,
41 A.D.3d 445 (N.Y. App. Div. 2007) ................................................................. 13

*O'Connor v. Huntington U.F.S.D.*,
No. 11-CV-1275(JFB)(ARL), 2014 WL 1233038 (E.D.N.Y. Mar. 25, 2014) ....... 13

*Okocha v. City of N.Y.*,
122 A.D.3d 550 (N.Y. App. Div. 2014) ............................................................... 13

*Petrosino v. Bell Atl.*,
385 F.3d 210 (2d Cir. 2004)................................................................................. 12

*Redd v. N.Y. Div. of Parole*,
678 F.3d 166 (2d Cir. 2012)................................................................................. 11

*Redd v. Wright*,
597 F.3d 532 (2d Cir. 2010)................................................................................... 8

*Reeve v. SEI/Aaron's, Inc.*,
2010 WL 2287482 (W.D.N.Y. June 2, 2010) ...................................................... 12

*Rother v. NYS Dep't of Corrs. and Comm. Supervision*,
970 F. Supp. 2d 78 (N.D.N.Y. 2013) ................................................................... 14

*Sanders v. N.Y. City Human Res. Admin.*
361 F.3d 749 (2d Cir. 2004)................................................................................... 9

*Sedotto v. Borg-Warner Protective Servs. Corp.*,
94 F. Supp. 2d 251 (D. Conn. 2000) ................................................................... 14

*Shabat v. Billotti*,
1997 WL 138836 (2d Cir. Mar. 18, 1997) ........................................................... 18

*Shumway v. United Parcel Serv., Inc.*,
118 F.3d 60 (2d Cir. 1997).................................................................................. 15

*Slattery v. Swiss Reinsurance Am. Corp.*,
   248 F. 3d 87 (2d Cir. 2011) ................................................................ 17, 22

*Smith v. HBO*,
   No. 12-CV-2177 (MKB), 2013 WL 2285185 (E.D.N.Y. May 22, 2013) ................................ 17

*Soderberg v. Gunther Int'l, Inc.*,
   124 F. App'x 30 (2d Cir. 2005) ................................................................ 18

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993) ........................................................................ 17

*Terry v. Ashcroft*,
   336 F.3d 128 (2d Cir. 2003) ................................................................ 13

*Texas Dep't of Cmty. Affairs v. Burdine*,
   450 U.S. 248 (1981) ......................................................................... 9

*Thornley v. Penton Publ'g, Inc.*,
   104 F.3d 26 (2d Cir. 1997) ................................................................. 18

*Ticali v. Roman Catholic Diocese of Brooklyn*,
   41 F. Supp. 2d 249 (E.D.N.Y. 1999) ........................................................ 18

*Trachtenberg v. Dep't of Educ. Of N.Y. City*,
   937 F. Supp. 2d 460 (S.D.N.Y. 2013) ....................................................... 11

*Trinidad v. N. Y. City Dep't of Corr.*,
   423 F. Supp. 2d 151 (S.D.N.Y. 2006) ....................................................... 13

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   133 S. Ct. 2517 (2013) .................................................................. 21, 23

*Walder v. White Plains Bd. of Educ.*,
   738 F. Supp. 2d 483 (S.D.N.Y. 2010) ....................................................... 16

*Waters v. Gen. Bd. of Glob. Ministries*,
   769 F. Supp. 2d 545 (S.D.N.Y. 2011) ....................................................... 20

*Weeks v. N.Y. State*,
   273 F.3d 76 (2d Cir. 2001) ................................................................ 10

*Williams v. Brooklyn Union Gas Co.*,
   819 F. Supp. 214 (E.D.N.Y. 1993) ......................................................... 19

*Winston v. City of New York*,
  No. 12-CV-0395 (FB)(VVP), 2013 WL 4516097 (E.D.N.Y. Aug. 23, 2013) ........................ 15

*Wolf v. Time Warner, Inc.*,
  548 F. App'x 693 (2d Cir. 2013) ......................................................................... 23

*Wright v. N.Y. City Off-Track Betting Corp.*,
  2008 WL 762196 (S.D.N.Y. Mar. 24, 2008) ....................................................... 22

## **Rules**

Fed. R. Civ. P. 56(a) ................................................................................................... 8

ix

## I.     **PRELIMINARY STATEMENT**

Defendant Honeywell International Inc. ("Honeywell") respectfully submits this memorandum of law in support of its Fed. R. Civ. P. 56 motion for summary judgment seeking the dismissal of all claims asserted by Plaintiff Donna Culleton ("Culleton") in her Complaint. As demonstrated below, the undisputed facts show that summary judgment is warranted in favor of Honeywell.

Culleton was employed by Honeywell as a Manager of Strategic Sourcing between April 2006 and November 2014, when she accepted another job offer and voluntarily resigned her employment at Honeywell. In her assigned role, Culleton was responsible for managing a team of buyers and commodity managers tasked with procuring inventory for products manufactured by Honeywell's Security Group. Starting in January 2012, Honeywell implemented several organizational changes in Culleton's department, which resulted in changes to the sourcing function operations and reporting structure. As a result of these changes, Culleton's job duties were narrowed to focus on managerial initiatives related to new product introduction ("NPI") and she began directly reporting to Thom Jones, who had been hired by Honeywell on January 30, 2012.

Culleton alleges she experienced immediate conflict with Jones upon his hire and that Jones was "impolite," "unreasonable," and "quick to anger" in almost every work-related interaction with her. Culleton also alleges that Jones "bullied" her and engaged in other rude or harsh conduct amounting to criticism of her performance.  While Culleton contends that Jones' harsh treatment was on account of her sex and age, the undisputed record establishes that Culleton's claims consist of *nothing more than her disagreement with Jones' opinion of her performance* – not any materially adverse change based on any discriminatory animus. To the contrary, Culleton admits that Jones made no gender or age based comments to her and that he treated *other women* more favorably than her. Culleton also offers no specific or probative evidence that Jones treated younger similarly-situated employees more favorably than her.

During the two-and-a-half years she reported to Jones, Culleton formally complained on

1

three occasions that she felt Jones was "bullying" her and had rated her performance unfairly. Honeywell promptly and thoroughly investigated each of Culleton's complaints and, following its investigations, determined that Culleton's claims of gender discrimination and/or unfair treatment were unsubstantiated. In late August 2014, Culleton began a full-time medical leave of absence from work during which she ceased all contact with Jones. Over two months later, while still on leave, Culleton secured a job offer with another company and voluntarily resigned her employment at Honeywell.

In her Complaint, Culleton alleges that Honeywell discriminated against her on the basis of sex and age and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the New York State Human Rights Law ("NYSHRL"). For the foregoing reasons, Culleton's claims are meritless, and the Court should grant summary judgment in favor of Honeywell.

## II.    STATEMENT OF UNDISPUTED FACTS[1]

Honeywell hired Culleton in 2006 as a Manager of Strategic Sourcing in Honeywell's Security Group ("HSG"). [SOF ¶ 1.] As a Manager of Strategic Sourcing, Culleton supervised a team of buyers and commodity managers who procured parts and material inventory for HSG products, and specifically, its Intrusion business line.[2] [SOF ¶ 6.] During the time period relevant to Culleton's Complaint, Honeywell maintained policies explicitly prohibiting unlawful discrimination, harassment, and retaliation. [SOF ¶ 4.]

Between 2008 and 2012, Culleton reported to Honeywell's Vice President of Global Sourcing Robert Simpson, whom she described as "professional," "polite" and "always approachable." [SOF ¶¶ 5, 15.] During the time she reported to Simpson, Culleton was responsible for procuring inventory for Honeywell's Juarez, Mexico manufacturing facility, which included inventory for HSG's existing product lines as well as new product introduction

---

[1] A detailed list of the material, uncontested facts is contained in Honeywell's Local Civil Rule 56.1 Statement. A summary of these facts is presented here for the Court's convenience.

("NPI"). [SOF ¶¶ 6-7.]  Culleton's job duties related to NPI varied from her duties related to existing product lines, and included negotiating supplier contracts, placing inventory orders, and establishing new and alternative sources for new product materials. [SOF ¶ 7.]

Beginning in 2010, Simpson repeatedly counseled Culleton to increase her level of delegation to more effectively utilize her team and allow her to focus her time on business initiatives identified by the Sourcing Department's senior management. [SOF ¶¶ 8-11, 13-14.] In early 2012, Simpson rated Culleton's yearly performance as a "five" on Honeywell's nine-block assessment, meaning she was "at standards." [SOF ¶ 12.] Simpson explicitly directed Culleton to focus on "embracing, driving, and identifying necessary changes" that were beginning to take place within the organization. [SOF ¶ 13.] Simpson also informed Culleton that he considered placing her on a performance improvement plan ("PIP") to address conduct by Culleton that created tension with the Global Team, although he ultimately decided not to issue the PIP. [SOF ¶ 16.]

## A. Honeywell Implements Several Organizational Changes In Culleton's Department.

In January 2012, Honeywell implemented several organizational changes within the Sourcing Department, including separating existing product procurement from NPI procurement and changing the Department's reporting structure. [SOF ¶¶ 17-20.] As a result of this reorganization, Culleton's job duties were narrowed to NPI procurement. [SOF ¶ 22.] According to Culleton, senior management did not initially define what job duties were encapsulated within the NPI role. [SOF ¶ 23.] Additionally, on January 30, 2012, Honeywell hired Thom Jones as its Director of Procurement. [SOF ¶ 21.] Upon his hire, Jones became Culleton's direct supervisor. [*Id.*]

## B. Culleton Experiences Immediate Conflict With Jones.

Culleton contends that she experienced immediate conflict with Jones upon his hire and that he was "impolite," "unreasonable," and "quick to anger" in almost all work-related

---

[2] Honeywell's Intrusion business line manufactures electronic security systems, including burglar alarm systems, for residential and commercial use. [SOF ¶ 6.]

interactions with her. [SOF ¶¶ 24-25, 28.] Specifically, Culleton recalls one situation in the first six months following Jones' hire where Jones "screamed" at her because she participated on a conference call that did not pertain to NPI. [SOF ¶ 26.] Culleton also claims that Jones "picked on" her and her staff by questioning the way they were performing their work. [SOF ¶ 29.] While Culleton believes Jones' conduct was based on "favoritism," she testified that she did not know the basis of Jones' purported favoritism. [SOF ¶ 30.] Culleton admits that she believes Jones treated *other women* more favorably than her and her female staff members. [SOF ¶ 31.]

Jones did, indeed, voice criticism of Culleton's job performance. [SOF ¶¶ 32, 56, 59-61, 64, 69, 75-79, 98, 108-109.] Jones found Culleton to be unadaptable to the changes in the Sourcing Department and expressed frustration at her failure to follow his work-related directives. [SOF ¶ 32.] In August 2012, Jones issued Culleton's mid-year performance review in which he identified her failure to focus on the managerial initiatives assigned to her as a critical performance deficiency. [*Id.*] Jones noted that there "appear[ed] to be a disconnect between the priorities and strategies identified by management and [Culleton's] own" priorities and strategies. [*Id.*] Jones specifically instructed Culleton not to focus on executing administrative tasks, which he felt should be delegated to her direct reports. [*Id.*] As would become a consistent pattern, Culleton disagreed with Jones' assessment of her performance and the duties she was expected to perform with respect to NPI. [SOF ¶¶ 36, 63-64, 82.]

### C.     Culleton Reports That Jones Treats Women Differently.

In January 2013, Culleton complained to Honeywell's Human Resources Director Sue Berdel that Jones treated women differently. [SOF ¶¶ 39-40.] Specifically, Culleton complained that Jones was dismissive and condescending in discussions with her and other female employees. [*Id.*] Honeywell promptly and thoroughly investigated Culleton's complaint by interviewing Culleton and several other women who had interacted with Jones, as well as reviewing some of Jones' email communications with Culleton.[3] [SOF ¶¶ 42-47.] Although he

---

[3] As part of its investigation, Honeywell held two skip level meetings where Culleton could freely raise her concerns about Jones to higher management. [SOF ¶ 45.] While Culleton raised several concerns about Jones' communication style and tone, she does not recall mentioning that she felt Jones favored men over women. [SOF ¶ 40.]

was interviewed in connection with the investigation, Jones was not informed that the complaint was initiated by Culleton. [SOF ¶¶ 89-90.] Based on its investigation, Honeywell did not substantiate Culleton's allegations of sex discrimination. [SOF ¶ 48.] However, the Company concluded that Jones would benefit from leadership and communications coaching. [*Id.*] Consistent with its conclusion, Honeywell implemented coaching for Jones, which Culleton admits temporarily improved her relationship with Jones. [SOF ¶ 53.]

### D.   Jones Repeatedly Counsels Culleton Regarding Her Performance And The Need For Her To Embrace Her Department's Organizational Changes.

In March 2013, Culleton received her first annual performance review from Jones. [SOF ¶ 54.] Jones rated Culleton's annual performance "at standards" – the very same rating she received from Simpson the prior year. [SOF ¶¶ 12, 54.] In addition to recognizing her strong areas of performance, Jones noted that Culleton was "resistant" to new department processes and demonstrated "difficult[y] fulfilling a strategy she is given if she does not herself agree with it." [SOF ¶¶ 55-56.] Jones further noted:

> There is no doubt that [Culleton] possesses some great knowledge and abilities. Midyear feedback directed her to apply those abilities as per the strategic direction provided by management. While she has improved, it was not without great resistance. 2013 presents her with a new organization structure, new opportunities to revise how some tasks are done, and a new chance to bring her department up to a new level of performance. If she is willing to put in the effort and make the chances, she will succeed.

SOF ¶¶ 57-58.]

In July 2013, Jones echoed continuing concerns and expectations regarding Culleton's performance in her 2013 mid-year review. [SOF ¶ 68.] In the review, Jones again noted that Culleton was not "embrac[ing] changes fully" and had not completed specifically-assigned tasks in the manner that had been requested (such as shortage reports and subordinate evaluations). [SOF ¶¶ 68-69.] Significantly, Culleton did not raise any concerns with Jones' assessment of her performance during 2013. [SOF ¶ 72.]

In March 2014, Jones issued Culleton's 2013 annual performance review. [SOF ¶ 73.] Consistent with her 2011 and 2012 performance reviews, Jones rated Culleton's annual

performance as a "five" on Honeywell's nine-block scale. [SOF ¶¶ 12, 54, 73.] Jones again recognized Culleton's strong technical knowledge and product delivery, but noted that she "continue[d] to selectively resist direction from management" and was "unwilling[] to change" her procedures and processes to conform to department directives, resulting in "key NPI shortages" and at least two late assignments. [SOF ¶¶ 74-75.]  Jones provided specific examples where he felt Culleton had failed to execute department directives and promote teamwork with other Sourcing Department teams. [SOF ¶¶ 75-79.] Jones further noted:

> [Culleton] continues to deliver some good results on individual projects, but her resistance to management directives is impacting her performance overall both as a manager and an individual contributor. The feedback provided by others has indicated that she does great work when she is in support of the process, but she regularly refuses to make that effort if she does not agree with the direction… Her team is capable of far more than is currently being delivered…

[SOF ¶ 80.] Finally, Jones set forth his clear expectations that going forward, Culleton was to implement management directives and properly execute her change management projects. [SOF ¶ 81.]

### E.    Culleton Complains That Her Performance Review Contains Misrepresentations.

On March 24, 2014, in the employee comments section of her 2013 performance review, Culleton complained that she felt the review was "character assassination" and a "biased" assessment of her performance. [SOF ¶ 82.] Culleton met with Berdel on April 9, 2014 to further discuss her concerns with the review. [SOF ¶ 83.] Specifically, Culleton complained that she felt Jones' constructive comments were "negative" and untrue. [*Id.*] Honeywell promptly investigated Culleton's complaint by conducting a detailed review of each constructive comment in her 2013 performance review. [SOF ¶ 84.] During the investigation, Jones provided detailed examples, along with supporting documentation, demonstrating that Culleton had not followed his directives or properly escalated non-NPI duties to him. [*Id.*] Jones also provided Honeywell with feedback from other supervisors which further supported his belief that Culleton was not adapting to changes within the Department. [SOF ¶ 85.]  Based on its investigation, Honeywell

concluded that Jones' performance feedback to Culleton was appropriate and consistent with his feedback to her throughout the evaluation period. [SOF ¶ 86.]

Shortly thereafter, in June 2014, Culleton complained to Human Resources that Jones was "bullying" and harassing her in work-related emails and communications by "picking on [Culleton's] staff" and favoring employees in another facility. [SOF ¶¶ 92, 102, 105.] Honeywell thoroughly investigated Culleton's complaint by interviewing Culleton and Jones on multiple occasions and reviewing the email correspondence Culleton had identified as "harassing." [SOF ¶¶ 93-98, 101, 103-104, 106-107.] Honeywell found that, while some of Jones' communications were critical of Culleton, they were based upon legitimate concerns with Culleton's performance, including those identified in prior performance reviews. SOF ¶107.] For example, on June 12, 2014, after learning that Culleton had failed to follow his explicit direction on the NPI plastics quotation process, Jones emailed Culleton:

> Donna,
> Why are you asking this question? I specifically told you previously that this was not in the plan at this time. You have not reviewed this proposal with me and are going against my specific direction to you.
> Please explain.
> Thom

[SOF ¶¶ 95-98.] While Culleton claimed Jones' "tone" was "threatening," Honeywell found (and Culleton acknowledges) that Jones was expressing his belief that Culleton's conduct was insubordinate. [SOF ¶¶ 99-100.] Based on its investigation, Honeywell concluded that Jones' communications with Culleton were professional and business-related and not bullying or harassing as alleged by Culleton. [SOF ¶ 107.]

**F.**     **While On A Medical Leave Of Absence, Culleton Resigns Her Employment.**

On August 8, 2014, Jones issued Culleton's 2014 mid-year performance review. [SOF ¶ 108.] In the review, Jones was critical of Culleton's continued resistance to changes within the Sourcing Department and her failure to escalate matters outside the scope of NPI to him – the very same concerns he had raised in her 2012 and 2013 performance reviews. [*Id.*; *see also* SOF ¶¶ 54-59, 68-70, 73-81.] Further, Jones noted that Culleton failed to develop and execute change

management projects related to NPI in accordance with his specific directives. [SOF ¶ 109.] Jones notified Culleton that, following the review, he planned to place her on a PIP.[4] [SOF ¶¶ 110-111.]

On August 25, 2014, *before* Jones implemented a PIP for Culleton, Culleton commenced a medical leave of absence. [SOF ¶ 112.] During the time she was on leave, Culleton had no contact with Jones or anyone in Honeywell's Human Resources Department. [SOF ¶ 114.] Also during her leave, Culleton applied for approximately 12 jobs outside of Honeywell. [SOF ¶¶ 115-116.] In late October 2014, Culleton accepted a job offer from another company. [SOF ¶ 117.] On November 3, 2014, prior to completing her leave of absence, Culleton voluntarily resigned her employment with Honeywell. [SOF ¶¶ 2, 118.] Culleton concedes that, had she not obtained alternative employment during her leave, she would have returned to work at Honeywell. [SOF ¶ 119.]

## III.  ARGUMENT

### A.  The Applicable Summary Judgment Standard.

Summary judgment is appropriate under Rule 56(a) of the Federal Rules of Civil Procedure where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute of material fact if no reasonable jury could return a verdict for the nonmoving party. *See Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010). Conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment, nor may a plaintiff create a genuine issue of fact by simply reiterating allegations in her complaint. *See, e.g., ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir. 2007); *In re Metlife Demutualization Litig.*, 624 F. Supp. 2d 232, 249, 258-59 (E.D.N.Y. 2009).

Culleton asserts that Honeywell discriminated against her on the basis of sex and age and retaliated against her in violation of Title VII and the Age Discrimination in Employment Act

---

[4] Honeywell utilizes the PIP process as a tool to assist employees in improving their performance by setting clear expectations and providing timely and candid feedback. [SOF ¶ 110.]

("ADEA"), and their state equivalent, the New York State Human Rights Law ("NYSHRL"). Culleton's NYSHRL claims are subject to the same legal standard as her Title VII and ADEA claims. *See Leibowitz v, Cornell Univ.*, 584 F.3d 487, 498 & n.1 (2d Cir. 2009), *superseded by statute in part on other grounds*; *Brennan v. Met. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999).

## B.   Summary Judgment Is Proper On Culleton's Sex Discrimination Claim.

Because Culleton has no direct evidence of sex discrimination, her claim is analyzed under the *McDonnell-Douglas* burden-shifting analysis. *See, e.g., Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). Under this analysis, Culleton must first establish a prima facie case, which requires her to show: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job satisfactorily; and (4) she was treated less favorably than similarly-situated employees outside her protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Leibowitz*, 584 F.3d at 498. If Culleton establishes a prima facie case, the burden then shifts to Honeywell to articulate a legitimate non-discriminatory reason for its employment action. *Leibowitz*, 584 F.3d at 498-99. If Honeywell meets this burden, then the burden shifts back to Culleton to prove that Honeywell's reason is pretext for discrimination. *Id.*

### 1.   Culleton Cannot Establish A Prima Facie Case Of Sex Discrimination.

#### a.   Culleton Did Not Suffer An Adverse Employment Action.

Initially, Culleton's prima facie case fails because she cannot demonstrate that she suffered an adverse employment action. To be actionable under Title VII or the NYSHRL, the acts of which Culleton complains must be a "materially adverse change" in the terms and conditions of her employment, meaning they are "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Sanders v. N.Y. City Human Res. Admin.* 361 F.3d 749, 755 (2d Cir. 2004) (examples of a materially adverse change include termination of employment, a demotion coupled with a decrease in salary, and a material loss in benefits or responsibilities). Specifically, Culleton must show that the acts of which she complains have "an attendant

9

negative result [or] a deprivation of a position or an opportunity." *Deberry v. Brookdale Univ. Hosp. and Med. Ctr.*, No. 12-CV-6251(SLT)(RLM), 2016 WL 3840673, at *5 (E.D.N.Y. July 12, 2016).

     *i. Critical Feedback Is Not An Adverse Employment Action.*

   None of the acts of which Culleton complains, including her purported unfair performance review and other alleged harsh treatment from Jones, rise to the level of a "materially adverse change." First, with respect to Culleton's claim that Jones issued her a "negative" performance review and intended to place her on a PIP, "courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." [SOF ¶¶ 67, 111, 113]; *Honey v. Cty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002). In other words, being advised and counseled does not, as a matter of law, constitute an adverse employment action. *See Weeks v. N.Y. State*, 273 F.3d 76, 86 (2d Cir. 2001) ("It hardly needs saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action.").

   Here, Culleton received "at standards" performance reviews with a one percent raise. SOF ¶¶ 12, 54, 66.] Culleton's mere personal opinion that her performance reviews and raise were "negative" because they should have been better is not sufficient to sustain a claim. [SOF ¶ 67]; *see Bowen v. City of N.Y.*, 13 F. Supp. 3d 179, 225 (E.D.N.Y. 2014) (plaintiff does not state an adverse employment action by claiming that a positive review is "negative" based on her belief that it should have been higher); *Boyd v. Presbyterian Hosp. in City of N.Y.*, 160 F. Supp. 2d 522, 543 (S.D.N.Y. 2001) ("Plaintiff cannot rely on her own belief that [a meets standards review] is a lesser evaluation than she deserved in order to establish an adverse employment action" and citing cases). Moreover, as Culleton admits, she was never actually placed on a PIP by Jones. [SOF ¶ 113.] Jones' stated intent to place Culleton on a PIP did not change Culleton's pay, responsibilities or benefits. *See Bowen*, 13 F. Supp. 3d at 225 (threat of disciplinary action

which never materialized is not an adverse employment action); *c.f. Brown v. Am. Golf Corp.*, 99 Fed. Appx. 341, 343 (2d Cir. 2004) (placement on a performance improvement plan and having to abide by its requirements is not an adverse employment action).

Culleton next claims that Jones was rude and impolite to her, screamed at her on one occasion, and generally required her to perform her work with insufficient resources.[5] [SOF ¶¶ 25-27.] These acts do not rise to the level of adverse employment actions. *See Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (supervisor's aggressive conduct towards plaintiff is not an adverse employment action); *Katz v. Beth Israel Med. Ctr.*, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001) ("Being yelled at, receiving unfair criticism, [and] receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions."); *Frida v. Henderson*, 2000 WL 1772779, at *6 (S.D.N.Y. Nov. 30, 2000) (excessive work and a

---

[5] To the extent Culleton contends that Jones' conduct created a hostile work environment, her claims fail because she cannot show that the harassment was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment, and that a specific basis exists for imputing Jones' objectionable conduct to Honeywell. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). First, even assuming Culleton's allegations that Jones unfairly criticized her performance, intended to place her on a PIP and was "impolite," "unreasonable," and "belligerent" in his communications, such conduct does not rise to the level of severe or pervasive harassment. [SOF ¶¶ 25, 63, 83, 111]; *see Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 527 (S.D.N.Y. 2015); *Trachtenberg v. Dep't of Educ. Of N.Y. City*, 937 F. Supp. 2d 460, 472 (S.D.N.Y. 2013). Further Culleton must, but cannot, demonstrate that the work environment was abusive *because of* her gender and/or retaliation. As explained in detail herein, Culleton sets forth no evidence of discriminatory or retaliatory animus by Jones and admits that he did not make any gender-based comments or sexual advances on her. [SOF ¶ 38.] Culleton's conclusory allegations of unfair treatment and Jones' "impolite," "belligerent" or otherwise unpleasant communication is insufficient to demonstrate harassment based on gender or retaliation. [SOF ¶¶ 25-28]; *Kamrowski v. Morrison Mgmt. Specialist*, 2010 WL 3932354, at *15 (S.D.N.Y. Sept. 29, 2010); *McWhite v. N.Y. City Housing Auth.*, 2008 WL 1699446, at *14 (E.D.N.Y. April 10, 2008).

Finally, even assuming Culleton can establish a hostile work environment, Honeywell can show that it exercised reasonable care to prevent and promptly correct any harassment; and that Culleton unreasonably failed to avail herself of any corrective opportunities provided by Honeywell or to avoid harm, thereby establishing an affirmative defense. *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 182 (2d Cir. 2012). Honeywell promulgated and distributed a Workplace Harassment policy that explicitly prohibited harassment based on any protected category, including gender. [SOF ¶4.] The undisputed record further demonstrates that Honeywell promptly and thoroughly investigated Culleton's claims that Jones had engaged in hostile or discriminatory communications with her. [¶¶ 43-46, 50, 84-85, 88, 93-94, 103, 106-107.] Based on its investigations, Honeywell concluded that Jones' communications, while critical, were work-related and based on his reasonable assessment of Culleton's performance deficiencies. [SOF ¶¶ 47, 86, 107.] Consistent with its conclusion, Honeywell implemented remedial actions to coach Jones regarding his communication and improve his working relationship with Culleton. [SOF ¶ 53.] Accordingly, as a matter of law, Honeywell exercised reasonable care to promptly correct any harassment. *See Chin-McKenzie v. Continuum Health Partners*, 876 F. Supp. 2d 270, 283-84 (S.D.N.Y. 2012).

supervisor's general negative treatment are not adverse employment actions); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 (N.Y. 2004) (2004) (shouting at plaintiff, snatching a pad from plaintiff's hands, and rolling of eyes when plaintiff spoke did not amount to adverse employment action); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 677-78 (S.D.N.Y. 2011) (micromanaging plaintiff and failing to provide her with necessary support and resources to perform her job are not an adverse employment actions).

> ii. *Honeywell's Failure To Select Culleton For A Position That Was Cancelled Due To Budgetary Constraints Is Not An Adverse Action.*

Culleton also fails to show that Honeywell's failure to select her for the category manager position for which she applied in early 2014 is an adverse action.[6] [SOF ¶¶ 130-132.] To establish her claim, Culleton must show she was "rejected under circumstances that give rise to an inference of unlawful discrimination." *Aulicino v. N.Y. City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009). Culleton must also show that, following her rejection, the position remained open and Honeywell continued to seek applicants for the position. *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004). Culleton simply cannot meet this burden. Rather, the undisputed record establishes that Honeywell cancelled the category manager position for which Culleton applied due to budgetary constraints. [SOF ¶ 133]; *Mullins v. Consol. Edison Co. of N.Y., Inc.*, 2015 WL 4503648, at *2 (S.D.N.Y. July 22, 2015) (slip op.) (plaintiff who applied for two positions that were later cancelled and never filled due to budgetary constraints cannot establish a prima facie case under Title VII or the NYSHRL). Accordingly, any claim predicated on Honeywell's failure to place Culleton in the cancelled category manager position fails. *Id.*;

---

[6] Culleton also claims that starting in 2006, Honeywell promoted certain male employees and did not give her an opportunity to advance. [Compl. ¶¶ 11-12.] Initially, Culleton's pre-June 2012 allegations are time-barred. *See DeNigris v. N.Y. City Health and Hosps. Corp.*, 861 F. Supp. 185, 192 (S.D.N.Y. 2012) Moreover, beyond her own speculation, Culleton points to no evidence suggesting that compared to men, she was not given an opportunity an advance. [SOF ¶¶ 134-135.]; *see Reeve v. SEI/Aaron's, Inc.*, 2010 WL 2287482, at *7 (W.D.N.Y. June 2, 2010) (granting summary judgment on plaintiff's failure to promote claim where plaintiff offered nothing except her "speculation regarding the lack of women in management" to support her claim that she was not promoted because of gender); *Lomotey v. Conn. Dep't of Transp.*, 2012 WL 642763, at *22 (D. Conn. Feb. 28, 2012) (plaintiff's unsubstantiated speculative opinion that she was denied a promotion due to her protected class is insufficient to overcome summary judgment).

*see also Okocha v. City of N.Y.*, 122 A.D.3d 550, 550 (N.Y. App. Div. 2014) (affirming dismissal of plaintiff's failure to promote claim where the positions "were never filled, as there was no longer a need for [them]").

### iii.   Culleton Was Not Constructively Discharged.

Finally, Culleton cannot establish that she was constructively discharged from her position at Honeywell. In order to maintain her constructive discharge claim, Culleton must show that Honeywell "deliberately made working conditions so intolerable that [she] was forced into involuntary resignation." *Nelson v. HSBC Bank USA*, 41 A.D.3d 445, 447 (N.Y. App. Div. 2007). "Working conditions are intolerable when, viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003) (citations omitted). Indeed, "unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Trinidad v. N. Y. City Dep't of Corr.*, 423 F. Supp. 2d 151, 168 (S.D.N.Y. 2006). In articulating the high threshold for demonstrating a constructive discharge, the Second Circuit has explained:

> A constructive discharge generally cannot be established . . . simply through evidence that an employee was dissatisfied with the nature of his assignments. . . . Nor is it sufficient that the employee feels that the quality of his work has been unfairly criticized. . . . Nor is the standard for constructive discharge merely whether the employee's working conditions were difficult or unpleasant.

*O'Connor v. Huntington U.F.S.D.*, No. 11-CV-1275(JFB)(ARL), 2014 WL 1233038, at *10 (E.D.N.Y. Mar. 25, 2014) (citations omitted). The stringent standard for establishing a constructive discharge claim is "higher than the standard for establishing a hostile work environment." *Gaffney v. City of New York*, 101 A.D.3d 410, 411 (N.Y. App. Div. 2012) (citations omitted); *see also Miller v. Praxair, Inc.*, 408 Fed. App'x 408, 410 (2d Cir. 2010) *cert. denied*, 131 S. Ct. 3067 (2011) (conditions alleged by plaintiff largely amounted to the sort of routine disagreements with supervisors or mild criticisms that are simply insufficient to establish

the sort of "intolerable" working conditions necessary to a constructive discharge claim) (citations omitted).

The undisputed evidence establishes that Culleton was not forced to resign her employment at Honeywell. Initially, Culleton cannot demonstrate that her routine conflicts with Jones and his criticism of her performance were so intolerable that a reasonable person in her shoes would have been compelled to resign. *See Miller*, 408 Fed. App'x at 410; *Campbell v. N.Y. City Transit Auth.*, 93 F. Supp. 3d 148, 171 (E.D.N.Y. 2015) (plaintiff's belief that she was unfairly criticized and disciplined and had her authority undermined did not meet the high burden required for constructive discharge); *Cecil v. U.S. Postal Serv.*, 2004 WL 1886202, at **1-2 (S.D.N.Y. Aug. 24, 2004) (supervisor's "abusive" behavior, "yelling" at plaintiff, criticizing plaintiff's performance, and once throwing papers at him during a meeting is not sufficiently intolerable to establish constructive discharge). Further, Culleton had no contact with Jones for over two months before she resigned her employment. [SOF ¶ 114]; *see Rother v. NYS Dep't of Corrs. and Comm. Supervision*, 970 F. Supp. 2d 78, 93-94 (N.D.N.Y. 2013) (reasoning that the constructive discharge inquiry focuses on working conditions at the time of resignation); *Katz*, 2001 WL 11064, at *14 (granting summary judgment where plaintiff had been on leave for several months prior to resignation and reasoning that "[t]he fact that a plaintiff had been out on leave for a time prior to her resignation makes it less likely that the resignation was prompted by an atmosphere so intolerable that a reasonable person would have felt compelled to resign").

Finally, Culleton admits that had she not secured other employment while she was on leave, *she would have returned to her position at Honeywell*. [SOF ¶ 119.] In other words, Culleton resigned to take a new job – not because her working conditions were intolerable. [SOF ¶¶ 115-118, 120.] Under these circumstances, Culleton cannot establish she was constructively discharged. *See Aspilaire v. Wyeth Pharm. Inc.*, 612 F. Supp. 2d 289, 312 (S.D.N.Y. 2009) (plaintiff's admission that she would have continued to work at her current employer had she not been offered another job is fatal to her constructive discharge claim); *see also Sedotto v. Borg-Warner Protective Servs. Corp.*, 94 F. Supp. 2d 251, 262 (D. Conn. 2000) (plaintiff's admission

14

that she did not resign until she secured another job strongly suggests that her resignation was voluntary and not constructive discharge).

> b. <u>Culleton Cannot Demonstrate That She Was Treated Less Favorably Than Similarly-Situated Men.</u>

Even assuming the acts of which Culleton complains constitute adverse employment actions (which they do not), Culleton's prima facie case fails because she cannot establish that similarly-situated male comparators were treated more favorably than her. Culleton must demonstrate that she and her purported male comparators are "similarly situated in all material respects," meaning that there exists "a reasonably close resemblance of the facts and circumstances." *Winston v. City of New York*, No. 12-CV-0395 (FB)(VVP), 2013 WL 4516097, at *2 (E.D.N.Y. Aug. 23, 2013). Male comparators who report to different supervisors, perform different job duties, and hold different positions compared to Culleton are not "similarly situated in all material respects." *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *Lioi v. N.Y. City Dep't of Health & Mental Hygiene,* 914 F. Supp. 2d 567, 584 (S.D.N.Y. 2012); *Beachum v. AWISCO N.Y.*, 785 F. Supp. 2d 84, 95 (S.D.N.Y. 2011).

Here, Culleton cannot identify any male comparators who were treated more favorably than her. Culleton admits that she cannot identify any individuals who held her same job title, performed her same job duties, and reported to her same supervisor. [SOF ¶ 121.] Although Culleton attempts to compare herself to Strategic Sourcing Manager Erik Biss, she admits that she managed more staff than Biss, performed different duties and had a different reporting structure than him based on their different business lines. [SOF ¶¶ 122-123.] Accordingly, because Culleton cannot identify any comparators who were treated better than her, her sex discrimination claim fails. *See Chacko v. DynAir Servs., Inc.*, No. 96-CV-2220(SJ), 2001 WL 930774, at *12 (E.D.N.Y. June 14, 2001) (granting summary judgment on plaintiff's sex discrimination claim where she cannot identify any male comparators who were both similarly situated to her and treated more favorably).

Further, Culleton's conclusory allegations that Jones treated women less favorably is insufficient to establish her prima facie burden. *See Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 500 (S.D.N.Y. 2010) (plaintiff's conclusory allegations that males were treated better are insufficient to meet her prima facie burden); *Dean v. Westchester Cty. Dist. Attorney's Office*, 119 F. Supp. 2d 424, 430 (S.D.N.Y. 2000) (plaintiff's conclusory claim and "the mere fact that she believed … male employees similarly situated were not disciplined for similar professional failures is not a sufficient basis to infer discrimination" as necessary to meet her prima facie burden). Culleton admits that Jones never made any sexual or other remarks to her which she felt were derogatory based on her gender. [SOF ¶ 38]; *Chan v. NYU Downtown Hosp.*, 2006 WL 345853, at *5 (S.D.N.Y. Feb. 14, 2006) (granting summary judgment on plaintiff's sex discrimination claim where plaintiff "does not point to a single degrading remark made during her employment based on her gender…"). Culleton admits that she believed Jones simply favored *female employees* other than her and her female team members. [SOF ¶¶ 31, 128.] Accordingly, Culleton cannot show any inference of gender discrimination arising from her treatment by Jones. *See Gavenda v. Orleans Cty.*, 2000 WL 1375590, at *3 (W.D.N.Y. Sept. 21, 2000) (reasoning that plaintiff's admission that her supervisor treated other women more favorably "undermines her assertion that the [adverse action] was premised upon sex discrimination").

**2.    Culleton Cannot Demonstrate That Honeywell's Legitimate Non-Discriminatory Reasons For Its Actions Are Pretext For Sex Discrimination.**

Even assuming Culleton can establish a prima facie case of discrimination (which she cannot), Honeywell can meet its burden of identifying a legitimate, non-discrimination reason for Jones' actions – namely, its well-documented, reasonable assessment that Culleton was not meeting the requirements of her position. [SOF ¶¶ ¶¶ 54-59, 68-70, 73-81, 84, 108]; *see Davis v. Avaya, Inc.*, 295 F. App'x 380, 381 (2d Cir. 2008) (plaintiff's poor performance, despite repeated counseling by her supervisors, is a legitimate, non-discriminatory reason for discipline); *Duprey v. Prudential Ins. Co. of Am.*, 910 F. Supp. 879, 887 (N.D.N.Y. 1996) (plaintiff's "[f]ailure to

perform her job duties to the satisfaction of her supervisors" is a legitimate, non-discriminatory reason for supervisor's conduct); *Mark v. Brookdale Univ. Hosp.*, 2005 WL 1521185, at *27 (E.D.N.Y. June 22, 2005) ("Unsatisfactory job performance is a legitimate nondiscriminatory ground for discipline.").

The record is replete with evidence that Jones honestly believed that Culleton was not executing managerial directives and the NPI-related tasks she had been assigned, despite his repeated counselings. [SOF ¶¶ 33-34, 59-63, 71-72.] In 2012, Jones counseled Culleton regarding her failure to focus on the managerial initiatives assigned to her. [SOF ¶¶ 32, 54-58.] Jones echoed his continuing concerns regarding Culleton's resistance to change and her refusal to follow his direction in her 2013 and 2014 performance reviews. [SOF ¶¶ 68-70, 73-82.] Significantly, Culleton admits that she was not performing her job duties or executing Jones' directives in accordance with his expectations. [SOF ¶¶ 33-34, 59-63, 71-72.] Culleton admits that she disagreed with Jones and refused to follow his direction regarding what job duties properly fell within NPI. [SOF ¶¶ 63-64.] Accordingly, Honeywell has met its burden of production. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 93 (2d Cir. 2001) (supervisor's dissatisfaction with the way plaintiff performed his job is a legitimate, non-discriminatory reason for employer's action); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1989) (employer meets its burden of production where its decision is based "upon an honest belief that [plaintiff's] job performance simply did not measure up…").

The burden thus shifts to Culleton to set forth "specific evidence" that Jones' criticism and his other purported harsh treatment was motivated by gender discrimination. *See Davis*, 295 F. App'x at 381; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). Culleton simply cannot make this showing. Culleton admits that Jones never made comments of a sexual or sex-based nature [SOF ¶ 38.] Further, she has not adduced other evidence suggesting that Jones was motivated by sex-based animus. [SOF ¶¶ 30, 37, 38.] Moreover, Culleton's admission that Jones favored women other than her belies her claim of gender discrimination. [SOF ¶ 31]; *see Gavenda v. Orleans Cty.*, 2000 WL 1375590, at *3; *Smith v. HBO*, No. 12-CV-2177 (MKB),

2013 WL 2285185, at *4 (E.D.N.Y. May 22, 2013) (plaintiff's allegation that her supervisor treated other females more favorably precludes any claim of discrimination based on gender).

Similarly, Culleton's subjective disagreement with Jones' evaluation and her opinion of her own performance are insufficient to establish pretext. *See Shabat v. Billotti*, 1997 WL 138836, at *2 (2d Cir. Mar. 18, 1997) ("[T]he fact that an employee disagrees with an employer's evaluation of him does not prove pretext."); *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F. Supp. 2d 249, 263 (E.D.N.Y. 1999), *aff'd*, 201 F.3d 432 (2d Cir. 1999) ("An employee's opinion that a performance review was unfair, supported only by her own conclusory statements to that effect, cannot bootstrap her claims into a Title VII claim of discrimination"); *McNamee v. Starbucks Coffee Co.*, 914 F. Supp. 2d 408, 418 (W.D.N.Y. 2012) (plaintiff's opinion of satisfactory performance is insufficient to create a triable issue of pretext). As the Second Circuit has consistently noted, "it is not the function of a fact-finder to second-guess business decisions regarding what constitutes satisfactory work performance." *Soderberg v. Gunther Int'l, Inc.*, 124 F. App'x 30, 32 (2d Cir. 2005); *see also Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997) ("Whether job performance was satisfactory depends on the employer's criteria for the performance of the job – not the standards that may seem reasonable to the jury or judge."). Indeed, Culleton concedes that she was not managing her team or embracing department changes and processes in accordance with Jones' clear expectations. [SOF ¶¶ 59, 64.] Accordingly, Culleton sets forth no evidence of pretext and her sex discrimination claim fails.

### C.   Honeywell Is Entitled To Summary Judgment On Culleton's Age Discrimination Claim

Because Culleton cannot product direct evidence of age discrimination, her claim is analyzed under the *McDonnell-Douglas* burden-shifting analysis. Thus, Culleton must first establish a prima facie case of age discrimination, which requires her to show: (1) she is over the age of 40; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment

action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of age discrimination. *Leibowitz*, 584 F.3d at 498 & n.1; *Mazur v. N.Y. City Dep't of Educ.*, 53 F. Supp. 3d 619, 632 (S.D.N.Y. 2014). Culleton bears the ultimate burden to demonstrate that her age was the "but for" cause of her alleged adverse employment actions. *Mazur*, 53 F. Supp. 3d at 632 (citing *Gross v. FBL Fin. Servs., Inc.* 577 U.S. 167, 178 (2009)).

### 1. Culleton Cannot Establish A Prima Facie Case Of Age Discrimination.

Initially, Culleton cannot demonstrate a prima facie case of age discrimination because she cannot demonstrate that (1) she was subject to an adverse employment action; or (2) any evidence giving rise to an inference of age discrimination exists. As set forth in detail in Section B.1.a. *supra*, Culleton cannot demonstrate that she experienced any adverse employment actions during her employment. *See, e.g., Bowen*, 13 F. Supp. 3d at 225; *Katz*, 2001 WL 11064, at *14; *Frida*, 2000 WL 1772779, at *6.

Culleton also must, but cannot, demonstrate any circumstances giving rise to an inference of age discrimination. Culleton admits that Jones never made any age-based comments to her. [SOF ¶ 126.] Culleton also offers no specific, probative evidence that Jones treated a younger employee more favorably than her. [SOF ¶¶ 127-128.]   To the contrary, Culleton's age discrimination claim is based entirely on her belief that Jones was "resistant" to her work experience and was more "complimentary" to unspecified younger employees. [SOF ¶ 129.] These uncorroborated assertions, without more, are insufficient to support an inference of age discrimination. *See Miller v. Nat'l Ass'n of Secs. Dealers, Inc.*, 703 F. Supp. 2d 230, 248 (E.D.N.Y. 2010) (plaintiff unsubstantiated statements that he received "harsher treatment" compared to younger employees and that his supervisor ignored younger employees' performance deficiencies is insufficient to demonstrate age discrimination); *see also Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 225 (E.D.N.Y. 1993) ("[P]laintiff's age, standing alone, is insufficient to satisfy his burden of proof").

Further, the undisputed record demonstrates that Jones was in Culleton's protected age class at the time he supervised her work and assessed her performance, thereby weakening any inference that his conduct was motivated by age discrimination. [SOF ¶ 125]; *see Bruder v. Jewish Bd. of Family & Children Servs.*, No. 10-CV-5951(MKB), 2013 WL 789231, at *7 (E.D.N.Y. Mar. 4, 2013) (reasoning that where the decisionmaker is also a member of the protected class, any allegation that he is motivated by age animus is weakened and citing cases); *see also Baguer v. Spanish Broad. Sys., Inc.*, 2010 WL 2813632, at *15 (S.D.N.Y. July 12, 2010), *aff'd*, 423 F. App'x 102 (2d Cir. 2011) (the age of plaintiff's supervisors – 45 and 49 – undercuts any inference of age discrimination). Accordingly, Culleton cannot establish a prima facie case of age discrimination, and her claim fails.

### 2. Culleton Cannot Establish Her Age Was The "But For" Cause Of Any Adverse Employment Action.

Even if Culleton could establish a prima facie case of age discrimination, Culleton cannot meet her ultimate burden to establish pretext. Culleton simply cannot demonstrate that Jones' criticism of her job performance or other purportedly harsh treatment would not have occurred absent her age. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) ("but for" causation standard requires plaintiff to show that "adverse employment action *would not have occurred without [age]*") (emphasis in original). Culleton concedes that Jones disagreed with her concerning her performance and believed that she was failing to follow his directives. [SOF ¶ 64.] As with her sex discrimination claim, Culleton's disagreement with Jones' assessment of her performance does not establish pretext. *Kelderhouse v. St. Cabrini Home*, 259 A.D.2d 938, 939 (N.Y. App. Div. 1999) (reasoning that "a challenge . . . to the *correctness* of an employer's decision does not, without more, give rise to the inference" of age discrimination); *Kalra v. HSBC Bank USA, N.A.*, 567 F. Supp. 2d 385, 397 (E.D.N.Y. 2008) (plaintiff's disagreement with his supervisor's assessment of his behavior does not amount to being "picked on" because of age); *see also Waters v. Gen. Bd. of Glob. Ministries*, 769 F. Supp. 545, 558-59 (S.D.N.Y. 2011) (granting summary judgment on plaintiff's ADEA and NYSHRL age discrimination claim

where plaintiff asserts no age-based comments or specific evidence of more favorable treatment to younger, similarly-situated employees, and rather, relies exclusively on his conclusory assertions of discrimination). Accordingly, Culleton's age discrimination claim fails as a matter of law.

**D.      Culleton's Retaliation Claim Fails As A Matter Of Law.**

To establish a *prima facie* case of retaliation under Title VII, the ADEA, or the NYSHRL, Culleton must demonstrate: (1) participation in a protected activity known to Honeywell; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004). If Culleton can establish such a *prima facie* case, the burden shifts to Honeywell to identify a legitimate, non-retaliatory reason for the adverse employment action. *See Aiossa v. Bank of Am., N.A.*, No. 10-CV-1275 (JS) (ETB), 2012 WL 4344183, at *2 (E.D.N.Y. Sept. 21, 2012), *aff'd* 538 Fed. App'x 8 (2d Cir. 2013). Once Honeywell does so, the burden then shifts back to Culleton to prove that Honeywell's stated reason is a pretext for retaliation and that Culleton's protected activity was the "but for" cause of the alleged adverse action. *See Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp. 2d 167, 191-92 & n.12 (E.D.N.Y. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013)).

**1.      Culleton Cannot Establish A Prima Facie Case Of Retaliation.**

Initially, Culleton's prima facie case fails because she cannot establish that she suffered any adverse employment actions at Honeywell. As set forth above, Culleton cannot demonstrate that Jones' criticism of her performance or the other purported harsh treatment she experienced rises to the level of a materially adverse change in her employment or intolerable working conditions as necessary to establish constructive discharge. *See* Section B.I.a., *supra*; *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (noting that anti-retaliation law "protects an individual not from all retaliation, but from retaliation that produces an injury or harm").

21

Moreover, Culleton cannot demonstrate a causal link between her purported protected activity and any alleged adverse employment action. First, the undisputed record establishes that Jones was not aware of any complaint of discrimination made by Culleton until spring of 2014. [SOF ¶¶ 52, 89-90.] Accordingly, Culleton cannot establish that Jones' assessment of Culleton's performance or other purported conduct predating March 2014 was based on retaliatory animus. *See Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 34-35 (E.D.N.Y. 2015) ("[W]here it is undisputed that the decisionmaker was unaware of the employee's protected activity, that fact may be evidence that there is no causal connection"); *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 859 (S.D.N.Y. 2013) (plaintiff's failure to set forth facts controverting that decision-maker was unaware of protected activity at the time of the adverse action cannot demonstrate a causal connection necessary to establish her prima facie burden).

Second, Jones' consistent feedback on the deficiencies in Culleton's performance, even in light of her continual pattern of complaints, belies any causal connection between her protected activity and her purported adverse actions. Culleton admits that Jones' purported harsh treatment of her initially *preceded* her alleged protected activity. [SOF ¶¶ 21, 25]; *see Wright v. N.Y. City Off-Track Betting Corp.*, 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008) ("If an employer's conduct before and after an employee complain is consistent, the post-complain conduct is not retaliatory") (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F. 3d 87, 94-95 (2d Cir. 2011); *Hahn v. Bank of Am. Inc.*, 2014 WL 1285421, at *18 (S.D.N.Y. Mar. 31, 2014) (plaintiff cannot demonstrate causal connection necessary to establish her prima facie case where supervisor's allegedly harassing conduct towards her both predated and postdated protected activity). Jones issued Culleton an "at standards" rating and expressed that she needed to embrace change within the Sourcing Department – both before and after she engaged in protected activity – and this feedback was consistent with that of her prior manager. [SOF ¶¶ 12, 54, 73, 82]; *see Hunter v. St. Francis Hosp.*, 281 F. Supp. 2d 534, 547 (E.D.N.Y. 2003) (plaintiff cannot show causal connection where he received consistent performance reviews from multiple supervisors before and after he engaged in protected activity). Culleton's continual complaints

22

during the two-and-a-half-year period Jones supervised her further belies any causal link between such complaints and Jones' performance feedback. *See Moini v. Univ. of Texas at Austin*, 832 F. Supp. 2d 710, 719 (W.D. Tex. 2011) (plaintiff could not rely on timing of complaints to support a causal connection where he complained "fairly regularly" and there was no "strong correlation" between the complaints and adverse actions); *Dilettoso v. Potter*, 2006 WL 197146, at *13 (D. Ariz. Jan. 25, 2006) (noting that, where a plaintiff routinely complains about workplace issues, "proximity in time will no longer effectively connote increased probability of interconnectedness between the adverse action and the protected activity.").

      **2.**      **Culleton Cannot Establish That "But For" Her Complaint(s), Jones Would Have Treated Her Differently.**

      Even assuming Culleton can establish her prima facie burden, her claim fails because she cannot demonstrate pretext. The Supreme Court has held that Title VII retaliation claims "require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2520-21 (2013); *see also Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 695 (2d Cir. 2013) (applying *Nassar*'s "but for" causation standard to ADEA retaliation claims). Thus, in order to demonstrate pretext, Culleton must, but cannot, prove that her protected activity was the reason for Jones' alleged adverse actions. *See Dall*, 966 F. Supp. 2d 167, 191-92 & n.12.

      The record is devoid of evidence that Jones acted with any retaliatory motive – much less that, but for her complaint(s), Jones would have assessed Culleton's performance or treated her differently. The undisputed evidence is that Jones was unaware of any complaints of discrimination made by Culleton until spring of 2014. [SOF ¶¶ 89-90.] Further, the record is replete with evidence supporting Jones' honest, good faith assessment that Culleton was not meeting the requirements of her position – both *before* and after he learned of Culleton's purported protected activity. [SOF ¶¶ 33-34, 59-63, 71-72.] Culleton admits that she routinely disagreed with Jones regarding how to manage her team and refused to follow his direction regarding what duties she was expected to perform as part of NPI. [SOF ¶¶ 59-61, 63, 64.]

Culleton further admits that she was not embracing department changes and was not performing specific tasks assigned to her by Jones, which she understood frustrated him. [SOF ¶¶ 59-60.] As such, Culleton cannot demonstrate that "but for" her purported protected activity, she would have been assessed more favorably than Jones. *See Wolf*, 548 F. App'x at 695-96 (plaintiff cannot establish requisite "but for" causation where her performance issues began before her supervisor learned of any protected activity).

Finally, Culleton's disagreement with Jones' performance expectations does not create a fact issue precluding summary judgment on her retaliation claim. *See Matye v. City of N.Y.*, 2015 WL 1476839, at *21 (E.D.N.Y. Mar. 31, 2015) ("[A] plaintiff's subjective disagreement with his performance reviews is not a viable basis for a … retaliation claim.") (citations omitted); *Housel v. Rochester Inst. of Tech.*, 6 F. Supp. 3d 294, 314 (W.D.N.Y. 2014) (same and citing cases). To the contrary, "a new manager is allowed to appraise an employee's work according to his or her own expectations, even if those expectations are contrary to a prior manager's expectations." *Brown v. Time, Inc.*, 1997 WL 231143, at *12 (S.D.N.Y. May 7, 1997) (no pretext where new manager "set his own standards and agenda" based on the employer's "changes to the department's atmosphere and expectations," which plaintiff did not meet). The Court does "not sit as a super-personnel department that reexamines an entity's business decisions" or its supervisors' performance standards. *Delaney*, 766 F.3d at 169; *Soderberg*, 124 F. App'x at 32 (noting "it is not the function of a fact-finder to second-guess business decisions regarding what constitutes satisfactory work performance"). Accordingly, because Jones consistently counseled Culleton on her admitted deficient performance, she cannot demonstrate "but for" causation as necessary to establish her retaliation claim. *See Wolf*, 548 F. App'x at 695-96; *Ehrbar*, 131 F. Supp. 3d at 36 (no "but for" causation where, prior to and after plaintiff's purported protected activity, plaintiff was routinely counseled by her supervisors regarding consistent performance issues).

24

## IV.    **CONCLUSION**

For the foregoing reasons, Honeywell's Motion for Summary Judgment should be granted and Culleton's claims of sex and age discrimination and retaliation should be dismissed in their entirety with prejudice.

Dated: New York, New York
       August 18, 2016

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: _____
     Allison E. Ianni
     1745 Broadway, 22nd Floor
     New York, New York 10019
     (212) 492-2500

     Leah S. Freed (admitted *pro hac vice*)
     2415 East Camelback Road, Suite 800
     Phoenix, Arizona 85016
     (602) 778-3700

     Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served this 18th day of August 2016, by sending it by Federal Express addressed to:

Matthew I. Marks
Thomas A. Ricotta
White, Ricotta & Marks, P.C.
3110 37th Avenue, Suite 401
Long Island City, New York 11101
Attorneys for Plaintiff

25885686.1