UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK
------------------------------------------------------
DONNA CULLETON,

        Plaintiff,

                **MEMORANDUM AND ORDER**

  -against-            15-CV-3739 (DRH)(ARL)

HONEYWELL INTERNATIONAL, INC.,

        Defendant.
------------------------------------------------------X
**A P P E A R A N C E S :**

**For the Plaintiff:**
**RICOTTA & MARKS, P.C.**
31-10 37th Avenue, Suite 401
Long Island City, NY 11101
By: Matthew Ian Marks, Esq.
   Thomas Ricotta, Esq.

**For the Defendant:**
**OGLETREE DEAKINGS NASH SMOAK & STEWART, P.C.**
1745 Broadway, 22nd Floor
New York, New York 10019
By: Allison Elizabeth Ianni, Esq.
   Leah S. Freed, Esq.

**HURLEY, Senior District Judge:**

  Plaintiff Donna Culleton ("plaintiff" or "Culleton") commenced this action against defendant Honeywell International, Inc. ("Honeywell" or "defendant") asserting claims of sex-based and age-based discrimination and retaliatory employment practices in violation of 42 U.S.C. § 2000(e) ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and New York's Human Rights Law ("NYHRL"), Executive Law § 296. Presently before the Court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons set forth below, the defendant's motion is

1

granted.

## BACKGROUND

The following facts are drawn from the parties' Local Rule 56.1 Statements and are undisputed unless otherwise noted.

Plaintiff began working for Honeywell in 2006 as a Manager of Strategic Sourcing. Honeywell invents and manufactures technologies to address global issues such as safety, security, and energy. In her role, she supervised a team of approximately eight managers tasked with procuring the proper amount of parts and material inventory for Honeywell Security Group products.

Between 2008 and 2012, Culleton reported to Honeywell's Vice President of Global Sourcing Robert Simpson ("Simpson"). In her 2010 performance review, Simpson noted that plaintiff needed to "initiate change" and delegate her day-to-day tactical work to her team so that she could focus her time on high-level managerial initiatives. In a July 2011 review, Simpson noted that plaintiff was a "dedicated, conscientious, driven, resource[] for [Simpson] and the business," but reiterated that plaintiff needed to delegate more effectively to her team and focus her time on managerial and business initiatives. (Def.'s R. 56.1 Stmt. ¶ 10.) In early 2012, plaintiff received another performance review where Simpson rated her a "five" out of nine, five meaning "at standards." (*Id*. ¶ 12.) The review praised plaintiff's product knowledge, but noted that she needed to focus on "bringing her team to the next level" by "embracing . . . and identifying necessary changes to methods." (*Id*. ¶ 13.)

On January 30, 2012, Honeywell hired Thom Jones ("Jones") to manage global inventory procurement. Upon his hire, Jones became plaintiff's direct supervisor and remained as such until plaintiff resigned in November of 2014. In August of 2012, Jones issued

2

plaintiff's mid-year performance review, noting that plaintiff spent too much time executing tasks and not enough time managing her team.

In January of 2013, plaintiff complained to Human Resources Director Sue Berdel ("Berdel") that she felt she was being harassed by Jones, that she felt like a "battered housewife," and that Jones was condescending and dismissive in their work-related interactions. Plaintiff also explained to Berdel that she felt Jones favored men over women because he omitted her from conversations with a male employee on plaintiff's team and because of the tone in which he communicated to Culleton and several of her female team members.

Honeywell investigated plaintiff's complaints by interviewing plaintiff, Jones, Jeannine Lane ("Lane"), the General Counsel of Honeywell, and another female employee who directly reported to Jones. As part of the investigation, Honeywell also arranged meetings where Culleton could voice her concerns to higher management, including Vice President of Supply Chain, Neal Speranzo ("Speranzo"). Ultimately, Berdel and Speranzo concluded that Jones did not demonstrate any inappropriate conduct or criticism based on plaintiff's gender. Honeywell also concluded, however, that Jones could benefit from leadership and communications counseling. Berdel informed plaintiff of the results of the investigation.

For several weeks after Jones received leadership and communications coaching from his supervisor, plaintiff noticed an improvement in their working relationship. However, on March 6, 2013, Jones issued plaintiff's 2012 annual performance review and rated her a "five," meaning "at standards." The review noted that plaintiff performed well in developing relationships with other departments and had strong product knowledge, but noted that she was resistant to new department procedures. On July 22, 2013, Jones issued Culleton's 2013 mid-

year performance review, which provided that plaintiff performed personal tasks very well, but reemphasized the need of her team to embrace changes. Then, on March 6, 2014, Jones issued Culleton's 2013 annual performance review. Jones again rated plaintiff a "five." Jones praised plaintiff's understanding of customer needs, among other things, but also stated that she resisted direction from management and was not promoting teamwork.

In early 2014, plaintiff applied for a promotion to Category Manager in Honeywell's Building Solutions business line. This was the only position she applied for while reporting to Jones. Plaintiff interviewed for the position, but according to defendant, subsequently, on or around September 18, 2014, Honeywell canceled the position due to budgetary constraints. Plaintiff, however, claims that the position was filled internally, though she does not recall how or from whom she learned that information.

On March 24, 2014, plaintiff complained to Berdel that she felt her 2013 performance review contained misrepresentations of her performance. On April 9, 2014, she met with Berdel to discuss her concerns about her review and Jones's management. Honeywell then proceeded to investigate plaintiff's complaints. Plaintiff claims, however, that the investigation was deficient in that Honeywell did not talk to any of plaintiff's staff or outside suppliers. Ultimately, Honeywell concluded that Jones's assessment of plaintiff's performance was appropriate, and Berdel met with plaintiff to inform her that the investigation did not support her allegations of bias.

On June 4, 2014, Jones sent an email to Berdel requesting guidance on how to address ongoing deficiencies in plaintiff's performance. On June 13, 2014, plaintiff sent an email to Berdel and Honeywell Associate General Counsel Josh Foster complaining that she was having a difficult time with Jones and that he was "[s]ending numerous emails falsely accusing [her]

4

of [unspecified] things." (Def.'s R. 56.1 Stmt. ¶ 92.) Berdel promptly responded to plaintiff's email requesting that she and plaintiff meet to discuss her complaints and requested that plaintiff send her the alleged emails. After several requests from Honeywell's Human Resources, plaintiff sent Berdel one email where Jones scolded her for going against his specific direction on a matter. In an effort to mediate, Berdel held a meeting on June 16, 2014 with Jones and Culleton. At the meeting, Jones reviewed his issues with plaintiff's performance.

On June 30, 2014, plaintiff reported to Berdel that she believed Jones was picking on her staff, and she forwarded a series of emails with Jones on or around June 30, 2014 where Jones had criticized one of plaintiff's team members. That same day, plaintiff forwarded to Berdel another series of emails with Jones from on or around June 26, 2014, in which Jones criticized the performance of one of plaintiff's team members. After reviewing the emails and interviewing plaintiff and Jones, Honeywell determined that the communications were appropriate and business-related.

On August 18, 2014, Jones issued plaintiff's 2014 mid-year performance review. In the review, he noted that plaintiff was meeting Honeywell's standards in most areas, but had missed deadlines in six different projects and continued to be resistant to changes within her department. Jones also noted that he intended to place plaintiff on a "Performance Improvement Plan." However, on August 24, 2014, prior to such plan being implemented, plaintiff commenced a medical leave of absence. While on leave, plaintiff obtained another job, resigned from Honeywell and did not return, and as a result, was never actually placed on such a plan.

## *DISCUSSION*

## I. Applicable Law and Legal Standards

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511,

518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Id*. at 211 (quoting *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford,* 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

## II.     Plaintiff's Discrimination Claims

### A.     Legal Standard

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-511 (1993). Under *McDonnell Douglas* and its progeny, a plaintiff must first establish a *prima*

*facie* case of discrimination by showing: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003). The burden of establishing a *prima facie* case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for [the adverse act]." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted). The employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and thus, "[e]vidence that an employer made a poor business judgment . . . generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

Should the employer satisfy its burden, the *McDonnell Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non." See *Reeves*, 530 U.S. at 143. To rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am.*

*Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998. Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

Finally, "the standards for proving [gender] discrimination under Section 296 of the New York Executive Law are the same as under Title VII." *Lucas v. South Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 146 (E.D.N.Y. 1998) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479 (1982); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (plaintiff's claim under New York's Human Rights Law "is governed by the same standards as his federal claim")). "[A]ccordingly, the New York Executive Law inquiry is subsumed within the Title VII analysis." *Id.* Moreover, age discrimination claims brought under the ADEA and NYHRL are similarly analyzed according to the *McDonnell Douglas* burden-shifting framework. *See Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 n. 3 (2d Cir. 2007).

**B.      Plaintiff's Discrimination Claims**

As described above, the Court begins its analysis by determining whether or not the plaintiff has made out a *prima facie* case. Here, defendant argues that no genuine issue of material fact exists as to whether plaintiff suffered an adverse employment action under circumstances giving rise to an inference of discrimination.

The Supreme Court has stated that in order to be actionable under federal discrimination laws, an adverse employment action must be "tangible" or

9

"material." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998); *see also Joseph v. Leavitt,* 465 F.3d 87, 90 (2d Cir.2006) ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.") (citation and internal quotation marks omitted). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761. Materially adverse employment actions also include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, ... or other indices ... unique to a particular situation." *Feingold v. New York,* 366 F.3d 138, 152 (2d Cir.2004) (citations and internal quotations omitted). However, a "bruised ego," a "demotion without change in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are all insufficient to constitute a tangible or materially adverse employment action. *Ellerth,* 524 U.S. at 761 (internal quotations and citations omitted).

Here, plaintiff claims that she suffered the following adverse actions: "(1) receiving lower evaluations with false statements contained therein – these evaluations limited her potential for salary increases and upward mobility within the company; and, (2) a denied promotion to category manager." (Pl.'s Mem. in Opp'n at 11.) According to plaintiff, these actions resulted in her loss of income.

"In the context of a discrimination claim, negative evaluations, criticism and unwanted scrutiny are not adverse employment actions absent a showing that such actions affected the terms and conditions of the plaintiff's employment." *Spaulding v. New York City Dep't of Ed.*, 2015 WL 12645530, at *35 (E.D.N.Y. Feb. 19, 2015). Here, plaintiff alleges that her negative evaluations affected the terms and conditions of her employment in that they limited

10

her ability to receive salary increases and a promotion. However, plaintiff has not pointed to any evidence demonstrating that she would have been eligible for a salary increase absent the negative reviews.

Moreover, her failure to promote claim is insufficient to withstand summary judgment. In order to succeed on a failure to promote claim, the plaintiff must show that she applied for and was qualified for the position to which she sought promotion and that the position remained open and the employer sought applicants having the plaintiff's qualifications. *See Petrosino v. Bell Atlantic*, 385 F.3d 210, 226-27 (2d Cir. 2004). Here, plaintiff has not provided any evidence demonstrating that she was qualified to become a Category Manager, that she was rejected, and that defendant kept the position open and sought other applicants with plaintiff's qualifications. Defendant, in contrast, has provided evidence that the position did not remain open and was canceled due to budgetary constraints. Defendant submits the declaration of Jaime Hanson, Director of Human Resources at Honeywell, who stated that "[o]n or around September 18, 2014, the Category Manager position . . . was cancelled and relocated to Mexico due to budgetary constraints." (Ex. 4. To Def.'s Mem. in Supp., Hanson Decl. ¶ 9.) Hanson also provided a copy of the "requisition records" for the Category Manager position, reflecting the position's status once the opening became available. These records show that the Category Manager position was canceled on September 18, 2014. (Ex. A to Hanson Decl.). Plaintiff has not presented any evidence to refute defendant's records, and therefore, her failure to promote claim does not withstand summary judgment. *See Mullins v. Consolidated Edison Co. of New York, Inc.*, 2015 WL 4503648, at *9 (S.D.N.Y. Jul. 22, 2015) (dismissing failure to promote claim where defendant presented uncontroverted evidence that position was canceled due to budgetary constraints).

In addition to the above grounds for dismissal, Plaintiff's discrimination claims also fail because plaintiff has not provided sufficient evidence that the alleged adverse actions took place under circumstances giving rise to an inference of discrimination. Although plaintiff claims that "Jones acknowledged . . . interacting differently with men and women," she does not point to any part of the record supporting this statement. (Pl.'s Mem. in Opp'n at 13.) Defendant, on the other hand, cites to the Business Conduct Incident Report ("BCIR") prepared by Berdel during the investigation of plaintiff's January 2013 complaint regarding Jones. According to the BCIR, during Berdel's interview with Jones, Jones stated that "perhaps when he acted 'strong' with women it seemed harsher than when [he acted strong] with men because he [is] more sociable with men." (Ex. 2 to Def.'s Mem. in Supp., Decl. of Sue Berdel ("Berdel Decl."), Ex. C, BCIR at 147.) Although plaintiff treats this as an admission to "interacting differently with men and women," (Pl.'s Mem. in Opp'n at 12), Jones's statement actually indicates that he treats men and women the same, but that he may "seem[] harsher" to women because he is "more sociable with men." Since "feelings and perceptions of being discriminated against are not evidence of discrimination," defendant's speculation about how women may perceive him is certainly not sufficient to support an inference of discrimination. *See Brodt v. City of New York*, 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999)). Accordingly, plaintiff has not presented sufficient evidence with respect to her *prima facie* case, and her sex discrimination claims are dismissed. The Court need not reach the rest of the *McDonnell Douglas* analysis.

With respect to her age discrimination claims, plaintiff attempts to demonstrate an inference of discrimination by "alleg[ing] that younger employees were treated and spoken to

in a less hostile manner than she." However, plaintiff's conclusory allegations are not enough to withstand summary judgment. When considering whether a plaintiff has shown that she was subjected to disparate treatment, i.e., treated "less favorably than a similarly situated employee outside [her] protected group," the Second Circuit requires that the plaintiff demonstrate that she was "similarly situated in all material respects" to the individuals with whom she seeks to compare herself. *Graham v. Long Island* R .R., 230 F.3d 34, 39 (2d Cir.2000). Here, plaintiff fails to offer any details about the employees she alleges were treated more favorably, let alone evidence demonstrating that they were similarly situated. As a result, plaintiff has not raised sufficient evidence with regard to her *prima facie* age discrimination claims, and those claims are dismissed without the Court having to reach the rest of the *McDonnell Douglas* analysis.

### III. Plaintiff's Retaliation Claims

**A.** *Legal Standard*

"Section 704(a) of Title VII makes it unlawful to retaliate against an employee, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e-3(a)). "In order to present a prima facie case of retaliation under Title VII . . . a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII, . . . [2] that the employer was aware of this activity," and "[3] that the employer took adverse action against the plaintiff." *Kessler v. Westchester Cty. Dep't of Social Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (internal quotation omitted). In addition,

the Supreme Court clarified the causation standard required by § 704(a) stating, "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," as distinct from "a motivating factor," which had previously been the standard in the Second Circuit. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 2013 WL 3155234, *16 (June 24, 2013); *Kessler*, 461 F.3d at 206.

Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*. *See Terry*, 336 F.3d at 141. Once the employee has established a *prima facie* case, the employer "must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the [employee] to demonstrate pretext." *Slattery*, 248 F.3d at 94-95. Retaliation claims brought under the ADEA and NYHRL are analyzed pursuant to the same framework. *Sutera v. Schering Corp.*, 73 F.3d 13, 16 n. 2 (2d Cir. 1995).

### B. *Application to Plaintiff's Retaliation Claim*

Plaintiff claims that "after [her] complaints of discrimination, Jones ramped up his hostility, issued evaluations containing false negative assessments, and gave a negative review of Plaintiff's job performance when she was seeking a transfer, despite previously giving her a satisfactory overall review." (Pl.'s Mem. in Opp'n at 17.)

Initially, defendant argues that plaintiff cannot demonstrate that she suffered any adverse action. However, what qualifies as an adverse employment action in the context of a claim of retaliation is much broader than a claim of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The scope of the antiretaliation provision extends beyond work-place-related or employment-related retaliatory acts and

14

harm."); *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2008) (concluding that "[p]rior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment no longer represent the state of the law") (internal citations omitted). The applicable test in the retaliation context is that a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (internal quotation marks omitted).

Here, plaintiff claims that the negative reviews she received from Jones constitute adverse action. Unlike in a discrimination context, "a negative performance review can constitute an adverse action for purposes of a retaliation claim." *Cerni v. J.P. Morgan Secs. LLC*, 208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015). Assuming for purposes of this motion that a reasonable trier of fact could find that plaintiff's reviews constituted adverse actions, however, there is not sufficient evidence of a causal connection between those actions and plaintiff's protected activities, i.e., her complaints. According to plaintiff, the timing of plaintiff's complaints and Jones's treatment toward her is evidence of discrimination. She explains, "[h]ere, the timing is such that after each of Plaintiff's complaints, Jones ramped up his hostility, issued false critiques of Plaintiff, and then undermined her ability to obtain a transfer to another position by issuing a negative assessment of her despite having previously assessed her as overall satisfactory." (Pl.'s Mem. in Opp'n at 19.) However, since it is undisputed that Jones first learned of plaintiff's complaints of discrimination in March of 2014, defendant argues that any pre-March 2014 allegedly adverse actions could

15

not have occurred as a result of a retaliatory motive. (Pl.'s R 56.1 Stmt. ¶ 90.) "The lack of knowledge on the part of particular *individual agents* is admissible as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity." *Papelino v. Albany Coll. of Pharm. Of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011). "A plaintiff may still establish a causal connection by 'counter[ing] with evidence that the decision-maker [who lacked knowledge] was acting on orders or encouragement of a superior who did have the requisite knowledge,' " *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 35 (E.D.N.Y. 2015), but plaintiff has not offered any such evidence here. Thus, plaintiff has not raised a genuine question of fact as to whether any of defendant's pre-March 2014 behavior was retaliatory.

Moreover, as defendant points out, "Jones' consistent feedback on the deficiencies in Culleton's performance, even in light of her continual pattern of complaints, belies any causal connection between her protected activity and her purported adverse actions." (Def.'s Mem. in Supp. at 22.) Defendant does not dispute that Jones consistently criticized plaintiff for her resistance to change and poor management of her team. Given that these comments were consistent both before and after Jones learned of plaintiff's complaints, plaintiff is unable to show the requisite causal connection between her complaints and Jones's reviews. *Wright v. New York City Off-Track Betting Corp.*, 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008) ("If an employer's conduct before and after an employee complaint is consistent, the post-complaint conduct is not retaliatory.") (citing *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 94-95 (2d Cir. 2001). As a result, plaintiff's retaliation claims are dismissed.

IV. *Plaintiff's Hostile Work Environment Claims*

Plaintiff claims that she has established a "gender-based hostile work environment

claim" pursuant to Title VII. (Pl.'s Mem. in Opp'n at 15.) In order to establish a hostile work environment claim, a plaintiff must prove: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (internal quotation marks and brackets omitted). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' " and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) ("Plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive.").

"Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" *Demoret*, 451 F.3d at 149 (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004)). However, "[t]here is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment," and instead, courts are to "view the circumstances in their totality, examining the nature, severity, and frequency of the conduct." *Alfano*, 294 F.3d at 379. What is necessary is that plaintiff establishes a link between the actions by defendant and plaintiff's membership in a protected class. *Id*. at 374; *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

As addressed above in the discussion regarding plaintiff's sex discrimination claim,

plaintiff has not presented any evidence linking Jones's actions to plaintiff's gender. As a result, plaintiff's hostile work environment claim is dismissed. *See Alfano*, 294 F.3d at 378 (holding that in order to make out a hostile work environment claim, plaintiff must provide evidence indicating that the defendant's actions were motivated by discrimination).

## *CONCLUSION*

For the foregoing reasons, defendant's motion for summary judgment pursuant to Rule 56 is granted in its entirety. Plaintiff's claims under Title VII, the ADEA, and the NYHRL are dismissed. The clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
June 29, 2017

/s/

Denis R. Hurley
United States District Judge